3-18-07-34 and registered under Eugenius Gerulis, deceased at Appalese by Daniel Merrick versus Remus Magrida Gerulis at Pallance by James Murphy Mr. Murphy Justice McDade, Justice Carter, Justice O'Brien There are a number of issues in this case and I'm going to attempt to sort of talk about some of the policy procedures overall before getting into the different presumptions that we're dealing with Because we have two, actually three different presumptions. We have a presumption with joint accounts, we have a presumption with powers of attorney, and we have a presumption concerning undue influence Ultimately, and it's all in the context of summary judgment too, which I would remind everybody, which perhaps in my view presents a greater burden on trying to get over these presumptions and what the court did Ultimately what we're trying to do in this case and what the courts are trying to do is get to the mindset of the decedent What did the decedent intend? We have, more specifically, what was his motivation, what was his intent in doing these things, and these are all uniquely generally inappropriate for summary judgment What we have in the situation is different presumptions to help us jump gaps that we have with evidence It's very natural in the realm of murder that if I aim a gun at you, I pull the trigger, there's a presumption that I mean to kill you I don't want to do that, Your Honor, but you get the point Sometimes we have to have presumptions Those are types of things, but those also have to do where you actually have a specific act of the person you're putting the intent on Now, in the case of joint accounts, we have that We have that less where there are fiduciary duties where there's been no use of the power of attorney What we don't have here, and I think this makes it different than other fiduciary duty situations, we're not dealing with an attorney-client relationship We're not dealing with professionals With attorneys, you're dealing with somebody that's well-educated, knows what the law is, knows what the ethical obligations are Is that a presumption, too? Perhaps it's, with some of the lawyers that I've run into, I suppose it is a presumption, yes But I think it's one that's well-found, that they hold themselves out to be that, so we should at least have that presumption That's all right So, in any event, that's far different than when you're dealing with a child-and-parent relationship When you're dealing with that type of situation, we're not dealing with a business relationship We're dealing with a relationship that has had decades to accrue You know, situations where, like it or not, some parents have favorites Some parents have favorites for reasons You know, there are issues about when it comes to disposing one's assets Do we feel comfortable with what somebody's going to do with the money? Do we, you know, some of the things and reasons that people may disinherit somebody They might be considered petty by other people's standards I don't like somebody's wife I don't like that, you know, they changed religion Or, my mother was very upset that I changed political parties You know, things like that happen Didn't have an effect on anything, but luckily You know, so, in some of these presumptions that have been talked about And I think of, I think it's de Jardin Some of the statements are made, they come from a particular point of view Without dealing with the total and complete complexity of family relationships and what may occur So, I ask that you take all of that into consideration We then get, though, to the joint accounts And the presumptions that are involved here with regard to the joint accounts Under the U.S. Supreme Court's case of Merchick There is an intent, a donated intent with joint accounts Also have a presumption of fraud dealing with financial relationships Now, Judge Allen used the power of attorney act to come to his presumption Despite the fact that under the terms of the power of attorney act The power of attorney has to be used before a presumption arises It's clear in the language So, are we dealing with a different type of fiduciary duty Possibly based on Remus's relationship to Eugenius We might be, but that certainly was not what the case was decided on So, I think because it was decided incorrectly based on the power of attorney act It should be remanded to the court and summary judgment should be reversed The power of attorney went into effect immediately upon his mother's death It did go into effect, but it was never There was no evidence that was ever used for any of the transactions that were involved in this case What kind of evidence would that be? Well, it would be usually with a financial institution probably That the power of attorney was used to set up a joint account And I will admit that with regard to what happened to these joint accounts There is very minimal evidence with regard to how they were initiated Apparently they were subpoenaed, the documents were subpoenaed But there is limited information in terms of what was gotten back The evidence largely consists of information concerning Eugenius putting money into accounts Knowing he was directing money into the accounts And then also using those accounts for various things Well, I still am not clear about the fiduciary duty Because if it began automatically, there was no triggering event No, but what I'm saying is at least under the power of attorney act It requires the power of attorney to actually be used So I think though, and perhaps this is I don't know if the question is could there be a fiduciary duty anyway Or a more generalized fiduciary duty And I would say probably there's various evidence of that One is by appointing somebody as the power of attorney But in terms of the evidence that would actually be used to engage in a power of attorney It would have been where somebody says here I have this power of attorney You could have a third party witness from a bank that came in And said the power of attorney was used to set up an account But instead what there is is indication that And evidence that Eugenius actually set up the joint accounts himself So it was therefore not used But they did the kinds of things together that a fiduciary would normally do I mean they set up the joint accounts Yes But you could also have a joint account set up in absence of a fiduciary relationship also Right, but the fiduciary relationship is in existence Yes So why would we not just assume that everything that he did was in furtherance of that I think that would be detrimental Because you sort of sweep away everything else that may have been a motivating factor in this case Now there also are differences And I suppose I'd sort of slice that question up perhaps Because we have the joint account for example Was that done in the context of a fiduciary relationship? It could have happened independently You'd look at certain things about the independence of it being set up Also by the mere fact that there is a joint account There is a competing presumption So that gets to the question of how you handle the competing presumptions And I don't know if that sort of is part of your question Do we put one ahead of the other? No, I'm actually really focusing on Just creating the fiduciary relationship itself Because so often when people set up the power of attorney It'll be something like when my doctor says that I'm no longer capable of making decisions myself Then it goes into effect If you don't have that kind of triggering event It would suggest I would think That the party setting up the power of attorney Intends for that to operate all the time I think it does show that it's to operate all the time I think what differentiates it though is If the person with the power of attorney just uses that to create something on his own Versus the principal also having an act So I think I guess I would distinguish that It's not to say that fiduciary duty isn't there But at least in this case we also have on the other side of it The joint account So I just want to make sure that By saying that there could be a fiduciary duty We're not sweeping away the other evidence that exists No, I'm not doing that You're saying he didn't act on it And that's what I am going to Is what tells us whether he was acting pursuant to the power or not When it was in existence all the time Because it would have had to have been I think something When you're, for example, when you're dealing with the joint accounts If you're acting under the power of attorney You don't need the principal to also be acting That's sort of the idea The principal can't act or is unavailable to act Or the fiduciary is acting in place of it Here we have the joint accounts being set up by both Remus and Jeroulas So in that case with the setting up We know that the power of attorney is not required There's no evidence that it was used And so therefore I'd say In this situation The power of attorney has not been used Now, I would probably say that That doesn't necessarily mean That there might be a fiduciary relationship otherwise That could be looked at But certainly that's not what Judge Allen based it on So I think there are a little bit of differences It could be both It could be both in certain circumstances But here's also one of the other questions with regards to it Sometimes we use presumptions to sort of jump a gap in evidence Other times we use them for policy considerations And in the case of the policy considerations Where you have an attorney You have the standard of proof to overcome something To burst the presumption Clear and convincing evidence with attorney Well, you know, again Very different than a family relationship Cases really haven't gotten to it But should that clear and convincing evidence be the same When you're dealing with parents and children? Here we're also And this is the problem also I think maybe you're perhaps alluding to Is many times all of these things are balled up into one When we're dealing with family members You know, the person that takes a parent into their house Is often the same person that you put the public attorney in And the same person that you put a joint account name in Now for various reasons Counselor has two minutes Sometimes And I want to jump quickly to the will and trust I hate to leave that alone entirely But here when you've got the will and trust We're also dealing with somebody's intent Fiduciary duty in itself is not enough To show that there is undue influence There has to be something more And the question here is Was there evidence about procuring the will And that it was independent?  You have to get away from the summary judgments at this stage To disbelieve Carl Smith Who was the attorney that was involved in it To say that he talked to Eugenius alone He made sure that Eugenius wanted to divide the property The way that the new will and trust did You know, it actually is sufficient facts To defeat the summary judgment I think on the creation of the presumption And then also attacking the presumption itself To burst the presumption And again, I think you have to take it into the family context And the cases that we talked about Certainly, Franciscan sisters Very similar facts for defeating the presumption And that was when an attorney was involved And drew the will up So, in these particular facts With the family relationships Summary judgment is just not appropriate in this case Thank you, your honors Another question? I do have just one more quick question I'm sorry That's alright, that's alright When the house was bought in Naperville Yes When the decision was made to buy the house Was that an exercise of the power? No, I would say no There's a couple of reasons One Actually, Eugenius wrote out a check to Remus For $130,000 Can I ask about the decision? The decision? No I would say that's not a decision That really, to the extent there's a decision I think there was a decision to move to a larger house A different house that was more accommodating to Eugenius Than the house they had lived in before I don't think it was an exercise of the power of attorney In fact, what you did have though Is, to back up You did have both Eugenius I believe signing off on the sale documents The transfer and the deed And Remus also signed off on that As a trustee of, I believe There was a real estate trust on that Is my recollection So I suspect You can say that there might have been fiduciary duties In terms of selling the house But then But again Eugenius was very much involved in Where those funds went to Was aware of what was going on The other thing I'd point out This is not a situation where Where somebody was of frail or feeble mind The record is replete with the fact that That his mental capacities were extremely good Despite any physical ailments Thank you Mr. Marron May it please the court My name is Daniel Marron And I represent The petitioners The Appellees Andrea Skouroulis and Lama Puzo Who are two of the three children of the deceased here I wanted to mention that It shouldn't be forgotten And it should be foremost in everyone's mind that The case below Proceeded from a set of undisputed facts The Remus did not dispute We had a whole litany Of what we asserted were undisputed facts You know, quoting to the record In our motion for summary judgment And he did not take issue with any of the facts None at all The reason that Presumptions apply here In most cases Is because my clients knew nothing About what happened Until after their father was gone And then they had to learn They had to find out through discovery and so on And what they found out was that You know, and we say in our brief And this is not to be dramatic It is the case This might be an all-time Illinois record For abuse of the elderly Financial abuse of the elderly Remus Skouroulis Divested his father of all Of his assets By the time Remus By the time Eugenius died And it's just It all was done in secret It was blatant, but it was in secret My clients didn't know anything about it They had some They took notice It's in the undisputed facts And my client Lima pointed out That there were adornments That occurred in Remus's home That were a bit of a surprise There was new landscaping There were new doorways There were new windows There were new everything But no idea that their father Had been completely divested of assets And so You know But it shouldn't be forgotten That these are undisputed facts  We know that Joint tenancies were set up After Eugenius died Remus's condominium was sold in Flora Joint tenancies were set up Remus had a Stood in a fiduciary relationship And it's not necessarily about how he Got into the fiduciary relationship We know how he did Because in 2001 his mother died He was the successor agent Under a power of attorney for property and for health care As to his father And upon his mother's death He admits he became a fiduciary He became a fiduciary And he was a fiduciary continuously until the death And there's no doubt about that There's no dispute whatsoever And we can get into the issue About whether powers of attorney were used or not But he was in a fiduciary relationship He admits it The other thing that ought to be remembered About this particular one Counsel points out that We shouldn't We shouldn't assume that Eugenius's mental acuity was diminished And that may be That may be But it's not an element of undue influence That we show A lack of capacity Or even diminished capacity It can factor into it But it's not an element of undue influence to show that But you know Remus in his affidavit In support of his statutory custodial claim Which was filed before the will contest And the recovery under section 16-1 Were filed In his affidavit He indicated that Eugenius had lost his wife He was lonely He was depressed He stopped taking his medications Remus went down to Florida And he and his father agreed That he should come back and live with Remus And he did Remus's affidavit states And again Either Remus is going to pick and choose What the facts are Or we can hold him to his affidavit His affidavit says flat out That Eugenius was under his 24-7 Round-the-clock care He was Eugenius after returning Back to Illinois Experienced a mini-stroke A worsening heart condition Remus was Bathing him and dressing him Changed his diapers when it was necessary This was not somebody Who was a strong, forceful Life force This is somebody who Judge Allen In the trial court Posed a question to counsel At the trial court level About why Eugenius had to sign a check To pay the $130,000 Towards the purchase of the Naperville home If he was already in a joint tenancy And there was already a gift made And he couldn't answer it And the reason is Eugenius Remus was in a fiduciary Relationship with his father And he wanted it To be absolutely clear That this was a gift It was made by Eugenius To his son And his son's wife But the reality is Under the law It was a gift made To the fiduciary While he was a fiduciary And it occurred after The fiduciary relationship existed It came into effect It was considered a gift But How was it That he would have been Able to live If he had to rent Or lived in an assisted living Or something of that nature That money would have been used For that purpose There are cases That doesn't demonstrate That it is It's presumable He's going to live there as well So I don't understand how Giving that money is necessarily A gift They could have charged him rent They could have done a lot of things What that shows is that there is this Intent to Divest him Divest him of the entire estate I mean Well It was $130,000 Which over 5 years time That's $26,000 a year For the 5 years that he lived As the record shows And is undisputed Eugenius was getting a pension He was getting social security Over the 5 years That generated $154,000 In income for Eugenius It went into an account That was in joint tenancy with Remus And Let me back up For the first 2 years That Eugenius was living with Remus In Illinois That money was going into an AmSouth account Which is a Florida account At the end of In the spring of 2007 Remus took that money and paid it over Into his own account In his name and the reader's name But the point is And that's where all this social security and pension was going So that social security and pension Then went into another account Which Remus had set up And put into a joint tenancy With his father So all of that money was going into a joint tenancy Account between himself and his father Eugenius Was paying his way The $130,000 You know you would think If you're going to pay $130,000 Towards There's nothing wrong with making a gift to your son There's nothing wrong with that But when you make a gift to your son And it's such a large quantity Of money And the person is already a fiduciary Then it is presumed fraudulent It is presumed that way And Remus had an obligation At the point of summary judgment To come back and show By clear and convincing evidence That this was not An abuse of the trust Abuse or betrayal of Confidence of his father That money went into the title The title was in Remus' and reader's name Remus got Or Eugenius got no There was no like reverter So reverter back to him Should he somehow survive His son and his daughter-in-law It just went It went directly to them Completely But it took place at a time when he was In a fiduciary relationship And so he has to explain it Under the Rizzo case Rizzo versus Rizzo Which is a case that gets Cited in the context of the Will and trust challenge It's required that There be a full and frank Disclosure of all material Facts to the principal And that the Principal have independent Advice before making Or entering into a transaction And Eugenius Was there was no evidence whatsoever That he got independent advice at all He at the time in 2004 He was suffering from a Compression fracture in his back He had just moved back to Illinois He was under 24-7 care of Remus And he Yes he did sign a check Made up for $130,000 Towards the purchase of this home But again under Rizzo There was no full and frank disclosure There was no independent Advice as to whether this was In his best interest And whether To explain the gift To show by clear and convincing evidence That it was a proper gift So It's presumptively fraudulent And it was our position As it is for virtually for all Of the transactions Regardless of the fact that he That the son Wasn't exercising his power As the power of attorney Because he didn't write the check He made out the check His father signed the check But the thing is It doesn't matter whether he had the power of attorney Or it doesn't matter whether he used the power of attorney He was in a fiduciary relationship The Shelton case Which Grimace cites in his appellate brief Actually is the only Supreme Court case That indicates that Multiple things That A presumption of fraud Arises when a fiduciary benefits from a transaction Involving the principal Again this is the only Supreme Court And it cites the D.J. Arnett case Which gets kind of Criticized In the reply brief Of counsel But it proceeds to say Once a fraudulent transaction Has been alleged Again this is the Supreme Court The burden then shifts to the agent To prove by clear and convincing evidence That the transaction was fair And did not result from his undue influence Over the principal It cites the estate of Miller In the estate of Miller Which is a 5th district case It was directly And expressly addressed The question of whether It is required To show a breach of fiduciary duty To use the power of attorney In setting up accounts And there were some accounts In the Miller case Which did involve Using the power of attorney To set up these accounts And there was a checking account That was not And the Miller court Determined that the power of attorney Did not need to be used To show a breach of fiduciary duty You didn't have to use your power of attorney To set up an account In joint tenancy with yourself In order to show a breach All you had to have Is a fiduciary relationship And the power of attorney gives rise To a fiduciary relationship So whether you use the power of attorney Or not is irrelevant Because you already stood In a fiduciary relationship With your principal And the Shelton case The Illinois Supreme Court Alludes to the Miller case Regarding these fraudulent transactions And the requirement That the principal Come back with clear and convincing evidence To show that it was not The result of undue influence So Getting back to the Rizzo case That's again where There has to be some showing By clear and convincing evidence That the principal received Full and frank disclosure Of what was happening Independent advice as to what was happening And there's reference to Adequate consideration for what was done So The thing about this is I don't know If It kept getting argued At the trial court level That we didn't have proof Of malevolent conduct Or showing that he had Manipulated or coerced his father Into doing these things And my response was It's presumed It is presumed because you stand In a fiduciary relationship But isn't that presumption cancelled out By the Donate of intent Of the Things that are owned in joint tenancy I mean Some of the cases that The Fourth District case I think that you already Talked about how The Presumptions are cancelled out When you have the competing presumptions The power of attorney in the joint tenancy That cancels those presumptions out So then you have to just look at The facts, right? Or you say no, that We shouldn't look at the Presumption in favour of a donated intent And only concentrate on the Presumption In favour of a fraudulent transaction Justice O'Brien The It seems to me That the Shelton case Flat out says That where a fiduciary benefits from a transaction Involving the principal A presumption of fraud arises Once a fraudulent transaction has been alleged The burden shifts to The agent to prove by convincing evidence That the transaction was fair Did not result from undue influence The burden, according to the very words Of the Shelton case Is on the fiduciary To show that it was free and clear From undue influence The Shelton case And then the cases that talk about The competing interest between When you have the fiduciary And the power of attorney But then you also have the Donated intent of joint tenancy Which one prevails In their case they say Well, you just don't They cancel each other out So then you look at That's not what the Supreme Court says, Judge That's not what it says It does not say that it cancels it out It says that the fiduciary Has the burden of showing by clear and convincing evidence That it was all free And independent And was free from Any undue influence at all Thank you There are cases, of course That talk about the canceling out And so I think the harms case And it cancels out And permits the trial judge to rule Based on the inferences that exist Once you cancel the The presumptions But the Shelton case Is Completely clear It is eminently clear And it cites the Miller case Which says that you In a situation exactly like what we have here Where there is a fiduciary relationship Which predates the transaction The transaction needs to be justified By the fiduciary It was mentioned I want to mention regarding the Will and the trust and so on That There was Evidence of Carl Smith, the attorney Testified that He helped Eugenius In carrying out the will and the trust And so on What has to happen in that situation Once again, Remus Was the fiduciary at that time And he called This is undisputed, he called Carl Smith He arranged for Carl Smith to come see his father He faxed information To Carl Smith After he met with Eugenius After Carl Smith met with Eugenius At the home of Remus Where Remus admits he was present He Followed up with another phone call To make sure he knew what my father Wanted That is undisputed And so this is different from The Anthony case which talks about Where you have witnesses to a will You shouldn't Jeopardize A person who is helping out Their father In this case Just because they're a fiduciary Because when you have a will You have witnesses that corroborate That this is all in the up and up And so on But what the The I'm sorry The Anthony case Expressed caution in this way That we shouldn't automatically think That when there's a fiduciary Who receives things under the will From the person To whom you owe a fiduciary duty It's presumptively fraudulent But in Anthony All the fiduciary did in that case Was drive the person to the lawyer Never met with the lawyer Didn't arrange for things with the lawyer In our case we have a completely different situation Where Remus set the whole thing up And Remus Followed up with it And made sure that it happened One of the things that stymied Judge Allen In the trial court Is why would First of all Carl Smith He never asked about anything else In regard to Eugenius' estate He never asked him What the state of his financial affairs was He never learned That The will and trust were irrelevant Because Everything was in joint tenancy With Remus Thank you Thank you very much If you have any questions Thank you very much Mr. Murphy Let me just go back To the last portion What Counsel says is really Basically all evidence that could be Considered and Would be fine for an argument Had it been based Had the decision been based on As a trier of fact Making that rather than summary judgment But those are all Although the Facts may be not disputed The result of those facts In terms of intent, motivation All of those things Still remain to be determined by the trier of fact Do you believe that no summary judgment Should have been granted either way Well I think the problem is Once you get actually to the bursting of the bubble At least with the will and trust There is really no evidence In terms of Undue influence Because then it has to be undue influence It's not just whether somebody was involved I don't think there's enough to show Undue influence So I think summary judgment would be appropriate actually For appellants On the trust issue Another thing With regard to Shelton Counsel makes a great deal of Shelton But Shelton did not address these issues It didn't address conflicting issues It hardly addressed Basically the fiduciary duties Because it said the fiduciary duties Were never triggered Cases are decided based on their facts Sometimes when courts List out the general rules It's like they're clearing their throat They're not really focused in on Particular issues The other thing it seems to me That the position that he's taking is That if you take on fiduciary duties If you take a parent into your house You can't accept a gift Because ultimately Lay people don't know How are they supposed to know? I mean the courts are even all over the board In terms of exactly what's supposed to happen What type of evidence is sufficient If you're going to come down with the rule That fiduciary children Cannot accept gifts Absent a whole litany Of what they should do You should come up with that whole litany Your point makes a distinction between I suppose a gift and everything Well But here's the problem I mean this sort of goes to two different parts Because we have $130,000 Which is You know A discrete amount We have the joint accounts which I would say go to The everything There could perhaps be a distinction on that But again then you have to get around The idea of what happens with Joint accounts and donorative intent And especially Within the familial situation I'm not saying That Try to absent this Absent the presumptions It necessarily falls one way or the other But the presumptions are very dangerous I think in situations like this When you are dealing with Families bringing in Elderly Or even Disabled Because those are the same type of situations That can arise Do you want to be in the situation Where you're discouraging that I suspect not So it has to be careful One of the things that cases don't talk about Is any type of sliding scale But that's sort of what happens In courts of equity anyway When presumptions don't come into effect Here we're sort of dealing with Binary issues Once something's proven Then you automatically flip one way I think that's inappropriate When you're dealing with family relationships And situations like this Of course these presumptions By their very nature deal with family relationships Many of them do But a lot of them also borrow from Situations where it's not parent and child Where you don't have Decades You might have a caretaker You might have a neighbor You might have an attorney Those are the things that I think At least you should be considering In terms of not only what the presumption is What it takes to raise the presumption But exactly what standard of proof Is required To rebut the presumption Because when we get to something called clear and convincing Each of you might have Different views of what clear and convincing Means Now when we get into the wills and the trust And the clear and convincing Climb Which is a third district case Really gets to the presumption Showing there's an issue of fact with regard to raising the presumption And then Franciscan Sisters Really gets to showing there's an issue of fact As to whether the presumed fact Has been enough evidence To burst the presumption And then put it to the prior effect Thank you If there are no other questions Thank you Thank you We thank both of you for your arguments this afternoon We'll take the matter under advisement And we'll issue a written decision Thank you